IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CARMEN NEWELL,

        Plaintiff,

v.                                            CIVIL ACTION NO. 2:13–cv–16405

C. R. BARD, INC.,

        Defendant.

## MEMORANDUM OPINION AND ORDER
(Defendant's Motion for Summary Judgment)

Pending before the court is the Motion for Partial Summary Judgment ("Motion") [ECF No. 38], filed by defendant C. R. Bard, Inc. ("Bard") on September 21, 2017. Plaintiff Carmen Newell filed a Response to the Motion on October 5, 2017 [ECF No. 42], and on October 12, 2017, Bard filed a Reply [ECF No. 43]. As set forth below, the Motion is **GRANTED in part** and **DENIED in part**.

## I. Background

This action involves a Florida plaintiff implanted with the Align TO Urethral Support System ("Align"), a mesh product manufactured by Bard, on October 7, 2008 in Melbourne, Florida. Short Form Compl. ¶¶ 1–12 [ECF No. 1]. This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation ("MDL") concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there

are more than 24,000 cases currently pending, approximately 3,000 of which are in the C. R. Bard, Inc. MDL, MDL No. 2187.

In an effort to manage the massive Bard MDL efficiently and effectively, the court decided to conduct pretrial discovery and motions practice on an individualized basis. To this end, I ordered the plaintiffs and defendants to submit a joint list of remaining cases in the Bard MDL, MDL 2187, with claims against Bard and other defendants where counsel has at least 20 cases in the Bard MDL. The list included nearly 3,000 cases. From these cases, I selected 333 cases to become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. *See* Pretrial Order No. 236, *In re C. R. Bard, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:10–md–02187, Jan. 27, 2017, https://www.wvsd.uscourts.gov/MDL/2187/orders.html. Upon the creation of a wave, a docket control order subjects each active case in the wave to the same scheduling deadlines, rules regarding motion practice, and limitations on discovery. I selected the instant civil action as a Wave 4 case.

II. **Legal Standards**

   A. **Summary Judgment**

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most

favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To discharge this burden, the moving party may produce an affidavit to demonstrate the absence of a genuine issue of material fact. *See id.* The moving party, however, is not required to do so and may discharge this burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325; *see also Pumphrey v. C.R. Bard, Inc.*, 906 F. Supp. 334, 336 (N.D. W. Va. 1995). If the moving party sufficiently points out to the court those portions of the record that show that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to come forward with record evidence establishing a genuine issue of material fact. *Pollard v. United States*, 166 F. App'x 674, 678 (4th Cir. 2006) (citing *Celotex, Corp.*, 477 U.S. at 325).

Should the burden shift, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson*, 477 U.S. at 256. The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Id.*

3

at 252. Likewise, conclusory allegations or unsupported speculations, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997). Summary judgment is therefore appropriate when, after adequate time for discovery, the moving party first discharges the initial burden and then the nonmoving party does not make a showing sufficient to establish a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322-23.

### B. Choice of Law

The plaintiff does not dispute Bard's contention that Florida choice-of-law principles apply to this case and that these principles compel the application of Florida substantive law to the plaintiff's claims.

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases. The choice of law for these pretrial motions depends on whether they concern federal or state law:

> When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (citations omitted). If a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, as the plaintiff did in this case, the court consults the choice-of-law rules of the state where the plaintiff was implanted with the product. *See Sanchez v. Bos. Sci. Corp.*, 2:12–cv–05762, 2014 WL 202787, at

4

*4 (S.D. W. Va. Jan. 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, the court will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). The plaintiff underwent the implantation surgery in Florida. Thus, Florida's choice-of-law principles guide the court's choice-of-law analysis.

Florida courts employ the "significant relationship test" to determine which state's substantive law to apply in a tort action. *Bishop v. Florida Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980). "The state where the injury occurred would, under most circumstances, be the decisive consideration in determining the applicable choice of law." *Id.*

> [I]n a conflict-of-laws situation, consideration should be given to four main factors: 1) "the place where the injury occurred," 2) "the place where the conduct causing the injury occurred," 3) "the domicil[e], residence, nationality, place of incorporation and place of business of the parties," and 4) "the place where the relationship, if any, between the parties is centered."

*Connell v. Riggins*, 944 So. 2d 1174, 1177 (Fla. Dist. Ct. App. 2006) (quoting *Bishop*, 389 So. 2d at 1001).

Here, the plaintiff resides in Florida, she was implanted with the product at issue in Florida, and her alleged injuries and follow-up care occurred in Florida. Accordingly, I **FIND** that Florida has the most significant relationship, and I apply Florida's substantive law to this case.

5

### III. Analysis

Bard argues it is entitled to summary judgment on the plaintiff's manufacturing defect claims (strict liability and negligence), breach of express and implied warranty claims, and her negligence claims to the extent she alleges negligent "marketing, labelling, packaging, and selling" because these claims are without evidentiary or legal support.

#### A. Conceded Claims

The plaintiff concedes the following claims: Count I in part (to the extent it alleges Negligent Manufacturing Defect); Count III (Strict Liability - Manufacturing Defect); Count V (Breach of Express Warranty); and Count VI (Breach of Implied Warranty). Accordingly, Bard's Motion regarding these counts is **GRANTED**.

#### B. Negligence

Bard contends that the plaintiff's claims for negligent marketing, inspection, packaging and selling of the products fail for lack of evidence. The plaintiff argues that Bard misconstrues the nature of her negligence claims, and that her allegations regarding the inspection, marketing, labeling, packaging, and selling of the product comprise part of her general negligence claim, rather than distinct theories of recovery. In short, the plaintiff asserts that Bard failed to adequately study or test the safety of its mesh products, and then failed to provide sufficient information to physicians and patients regarding associated risks.

A review of the plaintiffs' Count I in the Master Complaint, Master Compl. ¶¶ 62–67, No. 2:10–md–2187 [ECF No. 199], reveals that the plaintiff asserted three

6

distinct negligence theories under "Count I." The bulk of the Count I allegations make claims for negligent failure to use reasonable care in testing and inspecting the products. The other negligence allegations posit that Bard was negligent in "designing, manufacturing, marketing, labeling, packaging, and selling" the products. *Id.* at ¶ 64. Thus, the plaintiff's concern that Bard is misconstruing the plaintiff's negligence claim is meritless. Bard simply chose to address the plaintiff's different theories of negligence separately, a practice expressly permitted under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.").

I have previously addressed similar arguments in *Kaiser v. C.R. Bard, Inc.*, No. 2:12–cv–3655, 2016 WL 6782743, at *3 (S. D. W. Va. Nov. 15, 2016). As this MDL has aged, the court has had additional opportunities to conduct further review of the evidence. The court now concludes that summary judgment is inappropriate on this count. Accordingly, Bard's Motion on this count is **DENIED.**

IV. Conclusion

For the reasons discussed above, it is **ORDERED** that Bard's Motion for Partial Summary Judgment [ECF No. 38] is **GRANTED in part** and **DENIED in part**. Bard's Motion is **GRANTED** with regard to the following claims: Count I in part (to the extent it alleges Negligent Manufacturing Defect); Count III (Strict Liability - Manufacturing Defect); Count V (Breach of Express Warranty); and Count VI (Breach of Implied Warranty). Bard's Motion is **DENIED** in all other respects.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: January 31, 2018

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE